[No. C052783. Third Dist. Mar. 27, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN WILLIAM RACY II, Defendant and Appellant.

**COUNSEL**

Michelle E. Guardado, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Despite being "zapped" on the leg with a stun gun and chased down the hallway in his house, the elderly victim in this case was able to retreat to his bedroom, lie in a defensive position on his bed, and emerge unscathed as his wallet was stolen from his person. Based on these facts, a jury found defendant Norman William Racy II guilty of residential robbery

and elder abuse "under circumstances or conditions likely to produce great bodily harm or death." (Pen. Code,[1] § 368, subd. (b)(1).) The jury was unable to reach a verdict on charges of assault with a stun gun and intimidation of a witness, and the court declared a mistrial on those counts. Defendant was sentenced to prison for six years after the court refused to stay the punishment for felony elder abuse. Defendant appeals.

On appeal, defendant contends his conviction for felony elder abuse must be reversed because it was not supported by substantial evidence or, in the alternative, because the trial court prejudicially erred in failing to instruct the jury on the lesser included offense of elder abuse "under circumstances or conditions other than those likely to produce great bodily harm or death." (§ 368, subd. (c).) Defendant also contends the trial court erred in punishing him for elder abuse in light of his punishment for robbery.

We disagree with defendant's arguments on the sufficiency of evidence and alleged sentencing error, but we agree that the court prejudicially erred in failing to instruct the jury on the lesser included offense of misdemeanor elder abuse. In reaching these conclusions, we touch on the interesting issues of the need for expert testimony on the effects of a stun gun, the need for jury unanimity on the "circumstances or conditions likely to produce great bodily harm or death," and the court's alleged improper reliance at the sentencing hearing on defendant's statements in a probation report where similar statements were excluded at trial.

## FACTUAL AND PROCEDURAL BACKGROUND

Seventy-four-year-old James Picaso, Jr., was at home on the afternoon of Christmas Eve 2005 when he heard a noise in his house. When he went to the hallway to investigate, he saw defendant coming into his house through the back door without knocking. Picaso recognized defendant as the son of a tenant who had done "odd jobs" for him at one of his rental properties.

Upon entering the house, defendant demanded $500. When Picaso told defendant he did not have the money, defendant immediately "zapped" Picaso in the leg with a stun gun.[2] Picaso described the pain in his leg as similar to a

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury was instructed that "[a] stun gun is something that is used or intended to be used either as an offensive or defensive weapon and is capable of temporarily immobilizing someone by inflicting an electrical charge."

"poke" from an ice pick and rated the pain as a seven or eight on a scale of one to 10, with 10 being "debilitating." Picaso is an insulin-dependent diabetic who is "handicapped" primarily in his knees and cannot run because he cannot "get both feet off the ground at the same time." He is able to walk, though, and "retreated" to his bedroom where he tried to lock the door. Defendant was "so close behind" him that Picaso could not shut the bedroom door. Picaso reached for the telephone to call 911, but defendant "immediately pulled the cord out." "[T]o protect [him]self," Picaso "lay down on [his] bed on [his] back and put [his] feet up in the air," so he "could kick, if necessary."[3]

For the next 10 minutes, defendant asked Picaso for money while he "zapped" the stun gun eight to 10 times "in the air."[4] Defendant then "tip[ped] [Picaso] over," exposing his wallet. Picaso tried unsuccessfully to fight off defendant. The struggle moved the bed approximately one foot away from the wall. Defendant grabbed Picaso's wallet, tearing Picaso's jeans pocket. At some point during the struggle, Picaso "tripped." Defendant then ran out of the house.

Picaso went to the basement where there was another telephone and dialed 911. He gave the dispatcher defendant's name and defendant's mother's address, where Picaso thought defendant was headed. Within minutes, police went to defendant's mother's house and found defendant hiding in the bedroom closet underneath a pile of clothes. They found Picaso's wallet inside a fitted sheet on a bed. They could not find the stun gun. Picaso did not go to the doctor to have his leg examined, as there was no "evidence of burning or anything."

DISCUSSION

I

*The People Presented Sufficient Evidence to Support*
*Defendant's Conviction for Felony Elder Abuse*

A defendant can be convicted of felony elder abuse when he or she "knows or reasonably should know that a person is an elder . . . and who,

---

[3] At trial, Picaso described himself as six feet three inches tall and weighing 210 pounds. On the day of the incident, police described defendant as approximately 25 years old, six feet one inch tall and weighing 180 pounds.

[4] During these 10 minutes, defendant also asked Picaso how much money he had in his wallet. Picaso responded that defendant "didn't need to know." As to defendant's use of the stun gun during this time period, Picaso described defendant as "playing with it" rather than "threatening with it. But it didn't look very good to [him] no matter what."

*under circumstances or conditions likely to produce great bodily harm or death,* willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1), italics added.) Defendant contends his conviction for felony elder abuse must be reversed because "there was no evidence that the pain inflicted on Picaso was under circumstances or conditions likely to produce great bodily harm or death." We disagree because the People presented sufficient evidence under the applicable standard of review to support this element of felony elder abuse.

" 'The standard of review is well settled: On appeal, we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]' " (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572 [43 Cal.Rptr.3d 741].)

" 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' " (*People v. Sanghera, supra,* 139 Cal.App.4th at p. 1573.)

Defendant's argument is focused on the lack of expert testimony that use of a stun gun is likely to produce great bodily harm or death. He contends that a "lay juror is not situated to opine on whether [stun guns] are *likely* to cause great bodily injury," and argues that expert testimony is required when the facts from which conclusions are to be drawn are not a matter of common knowledge but are within an expert's knowledge. (See Evid. Code, § 801, subd. (a); *People v. Chapman* (1962) 207 Cal.App.2d 557, 573 [24 Cal.Rptr. 568].)

We agree with defendant that *in this case* the use of the stun gun by itself could not support the requisite "circumstances or conditions likely to produce great bodily harm or death." (§ 368, subd. (b)(1).) This is so because Picaso was not injured by the stun gun, and there was no expert testimony that a stun gun used on somebody similar to Picaso was likely to produce great bodily harm or death. If the only evidence of the "circumstances or conditions likely to produce great bodily harm or death" had been the use of the

stun gun, expert testimony would have been necessary because the effects of a stun gun, unlike the effects of more typically used weapons such as knives or handguns, are matters beyond the experience of average jurors.

Notwithstanding the lack of evidence that the stun gun itself was capable of producing great bodily harm or death, the evidence presented at trial, taken in the light most favorable to the People, supported a felony elder abuse conviction because there was sufficient evidence from which the jury reasonably could have concluded defendant willfully inflicted pain or mental suffering on Picaso "under circumstances or conditions likely to produce great bodily harm or death." (§ 368, subd. (b)(1).)

Defendant "zapped" Picaso in the leg with a stun gun, causing him substantial pain. Presumably, to escape the situation and avoid more pain, Picaso retreated to his bedroom, and defendant gave chase following "so close[ly]" that Picaso could not shut the bedroom door. When Picaso moved to the bed, defendant repeatedly "zapped" the stun gun "in the air" and then "tip[ped] [Picaso] over" and grabbed his wallet, tearing Picaso's jeans pocket. The struggle moved the bed approximately one foot away from the wall and caused Picaso to trip.

From this evidence, the jury reasonably could have concluded that defendant's close pursuit of Picaso (which prevented Picaso from locking the door) or the force defendant exerted on Picaso (which was strong enough to tip him over, tear his jeans pocket, and cause a struggle in which Picaso tripped and the bed moved one foot) likely could have caused Picaso to fall and break a bone, causing him great bodily harm. As stated, Picaso's knees are disabled and he is 74 years old, which, as a matter of common knowledge, is an age that carries with it an increased risk of bone fractures from a fall. The jury was in the best position to observe Picaso's condition at trial, and we will not second-guess the jury's finding that defendant inflicted pain or suffering on Picaso "under circumstances or conditions likely to produce great bodily harm or death" where the record contains sufficient evidence to support that finding.

Defendant contends we cannot rely on this evidence because, according to defendant, at trial the People "proceeded on the theory that the stun gun use was the infliction of great bodily injury, not the chase, not the opening of the

door, and not the arcing of the stun gun."[5] Defendant continues that had the People argued these additional theories, the court would have been required to give a unanimity instruction, which would have told jurors they all must agree on which act constituted the offense. (CALJIC No. 17.01.)

■ To defendant we say, "*legem cognosce*," or "read the statute." In drafting the elder abuse statute, the Legislature specifically contemplated that the "*circumstances or conditions* likely to produce great bodily harm or death" be examined to determine whether a defendant is guilty of felony elder abuse. (§ 368, subd. (b)(1), italics added.) There was nothing, therefore, to prevent the jury from relying on any or all of the circumstances and conditions we have recounted to support the charge of felony elder abuse without the need for unanimous agreement on a particular circumstance or condition. Simply put, in a trial for elder abuse, a jury is not required to unanimously agree on one circumstance or condition that was likely to produce great bodily harm or death, but rather, may consider all the "circumstances or conditions" that were likely to produce great bodily harm or death. As the People presented sufficient evidence in this case that defendant caused Picaso to suffer, or inflicted on him unjustifiable physical pain or mental suffering "under circumstances or conditions likely to produce great bodily harm or death," we reject defendant's argument.

## II

### *The Trial Court Prejudicially Erred in Failing to Instruct on Misdemeanor Elder Abuse*

Our finding of sufficient evidence, however, does not end the inquiry into whether we must reverse defendant's conviction for felony elder abuse. In a separate argument, defendant contends the trial court prejudicially erred in failing to instruct on misdemeanor elder abuse as a lesser included offense. On this point, we agree with defendant.

■ As is relevant here, the difference between felony elder abuse and misdemeanor elder abuse is whether the abuse is perpetrated "under circumstances or conditions likely to produce great bodily harm or death." If it is, the crime is a potential felony. (§ 368, subd. (b)(1).) If it is not, the crime is a

---

[5] We do not agree that the People limited their theory of the case solely to use of the stun gun as the "unjustifiable physical pain or mental suffering" inflicted "under circumstances or conditions likely to produce great bodily harm or death." The accusatory pleading did not specify the factual basis for the "circumstances or conditions" element and in closing, the People argued to the jury that the series of events from the initial use of the stun gun to the ripping of the jeans pocket was the conduct underlying the charge.

misdemeanor. (§ 368, subd. (c).) Misdemeanor elder abuse is a lesser included offense of felony elder abuse. (See *People v. Sheffield* (1985) 168 Cal.App.3d 158 [166, 214 Cal.Rptr. 40] [misdemeanor child abuse is a lesser included offense of felony child abuse]; *People v. Heitzman* (1994) 9 Cal.4th 189, 204–205 [37 Cal.Rptr.2d 236, 886 P.2d 1229] [the language of felony elder abuse statute "derives verbatim from the felony child abuse statute"].)

■ A trial court must instruct on a lesser included offense if there is substantial evidence from which a reasonable jury could conclude the defendant is guilty of the lesser offense, but not the charged offense. (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) "In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Id.* at p. 177.) If there were such evidence, we as the reviewing court then ask whether the error requires reversal of the defendant's conviction for the greater offense. (*Id.* at pp. 177–178.) In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 [299 P.2d 243] which requires reversal of the conviction for the greater offense "if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*People v. Breverman, supra,* 19 Cal.4th at p. 178.) Probability under *Watson* "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 918 [119 Cal.Rptr.2d 1, 44 P.3d 949].)

■ In this case, we do not need to separately analyze whether the court erred in instructing on the lesser included offense and whether it was prejudicial, because based on the record there was a reasonable chance the jury would have convicted defendant of misdemeanor elder abuse had the court instructed on this offense.

Picaso did not suffer great bodily harm during the incident, so the jury was left to draw inferences about whether the circumstances or conditions under which defendant inflicted physical pain or mental suffering were likely to produce great bodily harm or death. As we have explained in part I of the Discussion, *ante,* the evidence could support such an inference. However, in assessing prejudice, it does not matter that the jury chose to convict the defendant of the greater offense over acquittal or that the defendant was convicted of the greater offense on sufficient evidence. (*People v. Breverman,*

*supra,* 19 Cal.4th at p. 178, fn. 25.) As we will discuss below, the evidence supporting the guilty verdict of felony elder abuse was not so compelling that the jury instead could have reasonably reached a guilty verdict of misdemeanor elder abuse.

From the facts that appear in the record, it is reasonable the jury could have viewed Picaso as a rather large man who was not likely to suffer great bodily injury or death during the incident despite his age and physical limitations. Picaso is six feet three inches tall and weighs 210 pounds and even after being "zapped" with the stun gun and pursued by defendant, he was able to retreat to the bedroom, attempt to make a 911 call, and lie down on the bed in a defensive position. He emerged unscathed after being tipped and tripped.

■ Based on this evidence and the jury's inability to reach a verdict on whether defendant assaulted Picaso with the stun gun or intimidated him as a witness, there was a "reasonable chance" defendant "would have obtained a more favorable outcome" had the jury been instructed on misdemeanor elder abuse. (*People v. Breverman, supra,* 19 Cal.4th at p. 178; see *People v. Superior Court (Ghilotti), supra,* 27 Cal.4th at p. 918.) We must therefore reverse defendant's felony elder abuse conviction. "When a greater offense must be reversed, but a lesser included offense could be affirmed," the People have the "option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Kelly* (1992) 1 Cal.4th 495, 528 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

III

*The Trial Court Did Not Err in Punishing Defendant for Both Robbery and Elder Abuse*

For the trial court's guidance on remand, we address defendant's last contention that the trial court erred in punishing him for both robbery and elder abuse because "the elder abuse was integral to the robbery." We reject defendant's contention because the court's implied finding that defendant had different intents and objectives for these crimes was supported by substantial evidence that was presented at trial and in the probation report.

■ A defendant cannot be punished multiple times for convictions that arise out of "an indivisible transaction" and have a "single intent and objective." (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1583 [55 Cal.Rptr.2d 450].) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is

supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512 [80 Cal.Rptr.2d 308].)

Here, the trial court's implied finding that defendant had a separate intent and objective for robbery and elder abuse was supported by defendant's own admissions in the probation report and the evidence at trial. As stated in the probation report, when defendant was interviewed in jail nine days before sentencing, he explained both orally and in writing that he drove to Picaso's house on Christmas Eve and "confronted" him about Picaso's alleged "sexual[] assault[]" on his mother that had taken place the previous day. According to defendant, on the morning of Christmas Eve his mother was "crying 'hysterically' " and said Picaso had sexually assaulted her. When defendant "confront[ed]" Picaso at his home later that day, defendant told Picaso "he was going to 'pay' for what he did to his mother." From this evidence and the evidence presented at trial, the court reasonably could have concluded that defendant had a separate intent and objective for the robbery and the elder abuse: one was to take Picaso's money as defendant demanded money immediately upon entering the house and another was to assault Picaso over his conduct toward defendant's mother.

Defendant contends it is "unfair" to rely on his statements in the probation report to show he "possessed dual motives in committing the robbery and the elder abuse" because similar evidence regarding his motives in going to Picaso's house was excluded from trial as irrelevant and inflammatory. Although defendant is correct that the court excluded such evidence from trial, he is wrong that the court could not rely on similar evidence for sentencing purposes.

Simply because evidence is excluded at trial from the jury's consideration does not mean a trial court cannot consider similar or even the same evidence in deciding whether a defendant had multiple intents and objectives when committing the crimes for purposes of determining the appropriate punishment. Defendant has produced no case law to the contrary, and we note that he was never prevented from challenging the contents of the probation report at the sentencing hearing. Indeed, at the sentencing hearing even defense counsel acknowledged "there were collateral reasons for [defendant] going to Mr. Picaso's home," citing defendant's mother's statement that she had been "violated . . . the night before." On this record, then, the trial court did not err in punishing defendant for both robbery and elder abuse.

## DISPOSITION

Defendant's conviction of felony elder abuse (§ 368, subd. (b)(1); count 3) is reversed. If, after the filing of the remittitur in the trial court, the People do not retry defendant on count 3 within the time limit set forth in section 1382, subdivision (a)(2)—60 days unless waived by defendant—the trial court shall treat the remittitur as a modification of the judgment as to count 3 to reflect a conviction of misdemeanor elder abuse (§ 368, subd. (c)), and resentence defendant accordingly. (*People v. Woods* (1992) 8 Cal.App.4th 1570, 1596 [11 Cal.Rptr.2d 231].) In all other respects, the judgment is affirmed.

Sims, Acting P. J., and Morrison, J., concurred.