Filed 7/28/16  P. v. Ortega CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B265550 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA065013) |
| v. | |
| VICTOR S. ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Reversed.

Emily Lowther Brough, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jaime L. Fuster and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Victor S. Ortega appeals his conviction on one count of assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)),[1] one count of taking a vehicle without consent (Veh. Code, § 10851, subd. (a)), one count of criminal threat (§ 422, subd. (a)), and one count of corporal injury to a spouse or girlfriend (§ 273, subd. (a)). He contends that with respect to his criminal threat conviction, jurors should have been instructed on the lesser included offense of attempted criminal threats. He also argues, and the Attorney General agrees, that he is entitled to eight additional days of presentence custody credit.

We modify the judgment to add eight days of presentence custody credit, and we reverse and remand the criminal threat count in order for the People to either retry that count or reduce the charge to attempted criminal threat.

## BACKGROUND

On December 28, 2014, appellant and his sometime-girlfriend, Rose Escobar, were traveling in Rose's Honda Accord in Palmdale, Los Angeles.[2] Rose drove as appellant talked on Rose's phone. Rose suspected that appellant was receiving calls from a romantic rival named Vanessa, and she became upset with appellant. She told him to get out of her car and attempted to take her phone from him. Appellant would not release the phone and the two pulled it back and forth. Rose eventually retrieved the phone, and appellant hit her in the face several times. Rose stopped the car, got out, and left, telling appellant not to follow her. Appellant then drove away in Rose's car.

Rose was approached by a man named Armando Mejia, who offered assistance. Rose, screaming and crying, called her mother, Elvia Escobar. Rose told Elvia, who knew appellant and that appellant and Rose had dated, she felt appellant was going to kill her. Mejia gave Elvia directions to their location and Elvia, along with Rose's father, Robert, and her brothers, Robert, Jr., and Henry, arrived several minutes later. Rose told

---

[1] Unless otherwise specified, all references are to the Penal Code.

[2] The Escobar family members are referred to by first name to avoid confusion.

her family she believed appellant would have taken her car to Vanessa's house, so they drove to that location, but did not find Rose's car there. Visiting another location where the two had stopped earlier, they found Rose's car. Elvia called 911.

After Elvia called 911, Rose and her family saw appellant approach the car. Rose's father, Robert, parked his truck in the middle of the street, a block away from the car, facing the car. Robert rolled down the window of his truck and asked appellant for the keys, but appellant refused to give them to him. Elvia remained on the phone with 911 during this discussion. Robert, Jr., then approached appellant and argued with him. Appellant told Robert, Jr., to "back up" and reached into his pants. Robert, Jr., asked again for the keys and appellant said, "back up before I blast you." Appellant then looked at Rose and her family in the truck and said, "I'm going to blast you" approximately 15 times. Robert, Jr., testified that he was scared that appellant would shoot him. Elvia heard appellant say I'm going to blast you, and told the 911 operator he "said he's going to shoot us" at least three times. Elvia believed that appellant had a gun, and stated that to the 911 operator, although she did not actually see a gun. She testified she was scared, and it "felt like a long time" during the approximately five minutes between the time she initially told the 911 operator "he's going to shoot us" and police arrived. At one point after appellant ran into a house, prior to his arrest by officers, the 911 operator asked Elvia to make sure she was "in a safe spot" and she confirmed that she was in a safe spot. Elvia testified she was still afraid after appellant was arrested because she "didn't know what was going to happen."

Appellant was charged with nine counts, including five counts of criminal threats. After a jury trial, the jury was unable to reach a verdict on four of the five counts of criminal threats, and those four counts were dismissed pursuant to section 1385. Appellant was convicted of one count of assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)), one count of taking a vehicle without consent (Veh. Code, § 10851, subd. (a)), one count of criminal threat with respect to Elvia (§ 422, subd. (a)), and one count of corporal injury to a spouse or girlfriend (§ 273, subd. (a)). In a bifurcated proceeding, the trial court also found true one prior serious felony strike

3

alleged pursuant to section 1170.12, subdivisions (a) through (d), one prior serious felony alleged pursuant to section 667, subdivision (a), and three prior prison terms alleged pursuant to section 667.5, subdivision (b). The trial court sentenced appellant to an aggregate term of 17 years and 8 months in state prison, ordered appellant to obey a 10-year protective order, and to pay restitution, fines, and fees.

Appellant timely appealed.

## DISCUSSION

### A. Lesser Included Offense of Attempted Criminal Threat

Appellant contends the trial court made an instructional error by failing to instruct the jury on the lesser included offense of attempted criminal threat. In a criminal case, the trial court, sua sponte, must instruct fully on all lesser necessarily included offenses supported by the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 148-149.) A lesser included offense instruction is required "'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.'" (*People v. Barton* (1995) 12 Cal.4th 186, 194-195.) We review de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Section 422, subdivision (a) "prohibits 'willfully threaten[ing] to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat . . . which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety.'" (*People v. Chandler* (2014) 60 Cal.4th 508, 511; § 422.) "Sustained fear" means "a period of time that extends beyond what is momentary, fleeting or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) In that case, 15 minutes of fear was held to be sufficient to establish "sustained fear" for purposes of section 422. (*Ibid.*)

4

Attempted criminal threats is a lesser included offense of criminal threats. (*People v. Toledo* (2001) 26 Cal.4th 221, 231.) "A variety of potential circumstances fall within the reach of the offense of attempted criminal threat. For example, if a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person, the defendant properly may be found guilty of attempted criminal threat. Similarly, if a defendant, with the requisite intent, orally makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat, an attempted criminal threat also would occur. Further, if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat. In each of these situations, only a fortuity, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself." (*Toledo*, *supra*, 26 Cal.4th at p. 231.)

The trial court was required to instruct the jury if there was substantial evidence from which a reasonable jury could conclude that appellant was guilty of attempted criminal threats but not criminal threats. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1336.) Even assuming that the trial court should have instructed the jury on attempted criminal threats as a lesser included offense, reversal "is not warranted unless an examination of 'the entire cause, including the evidence,' discloses that the error produced a 'miscarriage of justice.' (Cal. Const., art. VI, § 13.) This test is not met unless it appears 'reasonably probable' the defendant would have achieved a more favorable result had the error not occurred." (*People v. Breverman*, *supra*, 19 Cal.4th at pp. 148-149.)

Appellant does not argue that insufficient evidence supports the jury's finding that Elvia suffered fear. Appellant argues only that the evidence concerning Elvia's state of

mind and the length of time she experienced fear was "ambiguous at best," such that a reasonable jury could have found that the evidence did not actually cause Elvia to be in "sustained" fear for her safety. We agree. Elvia testified more than once on the 911 call that she was in fear that appellant would shoot her or her family. The 911 tape includes Elvia saying "he's going to shoot us, he said," "he said he has a gun! He says he has a gun!" and she testified that even after the incident was over, she continued to be afraid and that the threat "just stayed in me." On the other hand, Elvia called 911 prior to appellant's arrival at the scene and was on the phone with the dispatcher during the entire confrontation with appellant. During the 911 call, prior to appellant's arrest, the dispatcher asked Elvia if she was in a "safe spot" and she indicated that she was. Appellant contends that the jury could reasonably have concluded that Elvia was not in "sustained" fear during the five minutes to which she testified, particularly given that during those five minutes Elvia told the 911 dispatcher she was in a "safe spot." A defendant is entitled to an instruction on a lesser included offense if some basis exists, "other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged." (*People v. Walker* (2015) 237 Cal.App.4th 111, 117.) Such a basis exists in this case, particularly given the jury's failure to reach a verdict on the four other criminal threat charges relating to the other victims, who also testified that they were in fear. The testimony and evidence "was not so compelling that the jury instead could have reasonably reached a guilty verdict" on the lesser included offense of attempted criminal threat.

"When a greater offense must be reversed, but a lesser included offense could be affirmed," the People have the "option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People v. Racy*, *supra*, 148 Cal.App.4th at p. 1336; citing *People v. Kelly* (1992) 1 Cal.4th 495, 528.)

**B**.     **Presentence Custody Credits**

Appellant contends he is entitled to eight additional days of presentence custody credit. The Attorney General concedes this point, and we agree. Appellant was arrested on December 28, 2014, and was sentenced on June 30, 2015. The actual time served,

therefore, was 185 days, rather than the 181 days credited at sentencing. As such, appellant should have been credited with 184 days of conduct credit. Accordingly, the abstract of the judgment must be amended to reflect a total of 369 days of presentence custody credit, comprising 185 days of actual custody and 184 days of conduct credit.

## DISPOSITION

The judgment is modified to reflect a total of 369 days of presentence custody credit. The criminal threat count is reversed and remanded for retrial. If the prosecution does not elect to retry that count, the trial court shall reduce that count to the lesser included offense of attempted criminal threat (§§ 664, 422) and resentence appellant accordingly.

NOT TO BE PUBLISHED.


CHANEY, J.


WE CONCUR:


ROTHSCHILD, P. J.


JOHNSON, J.


7