Filed 1/6/21  P. v. Wang CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>BEN WANG,<br><br>　　　　Defendant and Appellant. | B302758<br><br>(Los Angeles County<br>Super. Ct. No. MA076302) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Ashfaq G. Chowdhury, Judge.  Affirmed.

William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Susan Sullivan Pithey, Assistant Attorneys General, Noah P. Hill and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Ben Wang (defendant) appeals from his conviction of felony elder abuse. He contends that the trial court prejudicially erred in failing to give a sua sponte jury instruction for the lesser included offense of misdemeanor elder abuse. Finding neither error nor prejudice, we affirm the judgment.

## BACKGROUND

Defendant was charged with the infliction of injury under circumstances likely to produce great bodily injury, in violation of Penal Code section 368, subdivision (b)(1).[1] It was further alleged the victim suffered great bodily injury (see §§ 368, subd. (b)(2) & 12022.7, subd. (a)). A jury found defendant guilty as charged and the two special allegations to be true. On November 14, 2019, the trial court sentenced defendant to a term of five years in prison, execution of sentence stayed, and placed defendant on formal probation for five years with specified conditions, including 364 days in jail, with combined custody credit of 160 days; direct victim restitution; and payment of fines and fees.

Defendant filed a timely notice of appeal from the judgment.

**Prosecution evidence**

*Schuzhi Yang*

Schuzhi Yang (Yang) testified that at the time of trial, October 2019, she was 72 years old. On March 1, 2019, she and her husband Zhaorong Guo (Guo), rented a room in defendant's

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

2

Lancaster home, intending to stay until April 15. Defendant agreed to help them move into his home, to take them to the airport when they left for China, and to provide transportation to the supermarket and hospital where Guo had recently had hip replacement surgery. Defendant helped them move and took them to the supermarket once, but then did not provide the agreed-upon transportation. Other conflicts arose: defendant would not allow Yang and Guo to sign a written rental agreement; the couple was not able to lock their door; defendant told them he would not take them to the airport after all; and defendant pressured them to buy his vitamin supplements and makeup products. Defendant also reneged on his agreement to store the couple's belongings for one week after April 15.

On April 4, 2019, Yang and Guo were in the kitchen having dinner and defendant was in the nearby living room. The living room, which was covered with thick carpeting, was separated from the dining room by a partial wall with an open area between the two rooms. Defendant made several trips into the kitchen, making comments each time, as he showed Guo photographs of women. Yang considered some of the comments to be obscene, such as: "Look at this big ass. And check out the big boobs. Hell, yeah. That's going to feel so good." Defendant also said to Guo that Yang was old, ugly, and not sexy, and then laughed as he left the room. Wanting to stop defendant from saying such things, Yang went into the living room where she stood about three feet from where defendant was sitting at a computer desk. She asked, "Why are you saying all this nonsense?" He replied that he was talking to her husband, and "It was none of your business." They argued, and defendant asked if she wanted to fight him physically. She replied that she did not, but did not

want him to speak as he had. Defendant then stood, turned to face Yang, stepped toward her, placed both hands on her shoulders, and pushed her, saying "I'm going to beat you to a pulp."

The push caused Yang to hit the wall with her head and shoulders, making a loud boom sound, and after hitting the wall, she fell to the floor. Guo immediately entered the room. Yang felt weakness in her lower back and all over, and was unable to get up. Defendant then grabbed her by her collar, dragged her upward, and said she faked everything. Yang told Guo to call 911. Both the police and an ambulance responded. Yang was taken to the hospital, where she was diagnosed with a fracture in her back. At the time of trial she still wore a support device around her waist, had lost five of her 154 centimeters in height, and could not stand or sit for long periods.

### *Zhaorong Guo*

Guo testified that on April 4, 2019, as he and Yang were having dinner in the kitchen, defendant repeatedly came into the room with his cell phone to show him photographs of women. Defendant said, "Your wife is both old and ugly. Let me introduce you some more beautiful ones. Look at. Take a look. This one has big boobs. And that one -- that one is pretty." Guo tried to stop him, but defendant returned several times. Guo thought that defendant was trying to provoke some sort of disagreement between him and his wife. After Yang went into the living room, Guo continued eating in the kitchen. He then heard defendant's voice and a loud bang on the wall. Guo immediately went into the living room, where he saw his wife sitting on the floor near the wall. The distance between that wall

and defendant's desk was about 14 feet. When Guo came in, defendant was approximately halfway between the desk and the wall, facing Yang. Without saying anything, defendant pulled Yang up by her clothing and said that she was faking. Guo called 911. Defendant then took the cell phone from him and threw it into the garden. When Yang was taken to the hospital, Guo went with her.

**Defense evidence**

Defendant testified that he decided to rent out a room in his house after he lost his telemarketing job selling vitamin supplements. He placed an ad in a Chinese-language newspaper, received many calls, but chose Yang and Guo because they were simple people who did not smoke, were old, and could help take care of the house. The day they moved in, they paid for the one and a half months they would be there. He helped them move in and agreed to take them to the airport when they left, but otherwise they took trains and buses. Defendant claimed that they had no arguments between March 1 and April 4, and until then their relationship was good. He denied trying to sell them vitamin supplements, but had invited them to take some free of charge. Defendant taught Yang to ballroom dance, and took her and Guo to the supermarket to buy groceries. Defendant claimed that Yang never asked about locking their door.

On April 4, defendant went into the kitchen twice to show Guo photographs of women who were colleagues in his company, wearing company uniforms. Jokingly, defendant said, "These are young girls," and, "They could be my nieces." Defendant denied calling Yang old and ugly, and claimed that he was referring to a photograph of a woman who was over 70, and that he was only

5

joking.  Defendant assumed that Guo was happy because he was a man; however, Yang did not look happy, so he did not return to the kitchen.

Defendant went to his study, and was looking on his computer and cell phone, when Yang quickly walked in and said, "You did that on purpose, didn't you?"  Defendant stood up, and Yang said, "You purposely wanted to separate us; right?"  Defendant did not reply, and backed away because Yang was then trying to grab his cell phone.  When he raised his arm high to keep her from taking the phone, Yang stood on her toes trying to reach it.  When defendant moved back, Yang failed to stand steadily, and fell to the floor in a sitting position between the desk and the wall.  She did not hit her head.

Defendant denied having pushed her, claiming he could not have done so since he was holding his cell phone.  He also denied making any contact with Yang's body until he tried to get her up.  He said "Stop faking it," because he thought that she was pretending, since she fell on carpet and did not hit the wall.

Defendant also thought Yang was faking her injury because she liked to joke around with him.  To prove he was correct he took her cell phone after she fell, and put it near the root of the tree outside.  He saw Yang run quickly to pick it up, and quickly run back to sit near the corner of the wall.  Defendant then testified that there had been two trips to retrieve the cell phone, one to the backyard, when both Yang and Guo ran there, and another when, defendant, Yang and Guo ran to the front yard -- all after she fell.  Defendant then testified that he took her phone after she called 911, but he was not certain whether the call was real, so he grabbed her husband's phone, ran to the front yard and placed it under the tree.  Yang then got

up, ran to the tree and picked up the phone. Defendant denied grabbing Yang after she fell. He explained that he was about to pull her up but she declined and waived his hand to the side.

Defendant thought Yang was lying when she testified that he threatened to beat her up. He claimed that before the day of the incident, Yang had mentioned that she had lower back pain, but that it improved with dancing.

## DISCUSSION

Defendant contends that the trial court erred by failing to give a jury instruction regarding misdemeanor elder abuse.

Although a trial court must instruct the jury sua sponte on a lesser included offense if there is substantial evidence supporting it, "the 'substantial' evidence required to trigger the duty . . . is not merely '*any* evidence . . . no matter how weak' [citation], but rather "'evidence from which a jury composed of reasonable [people] could . . . conclude[]'" that the lesser offense, but not the greater, was committed. [Citations.]" (*People v. Cruz* (2008) 44 Cal.4th 636, 664.) Substantial evidence is ""'evidence that a reasonable jury could find persuasive'" [citation], which, if accepted, "'would absolve [the] defendant from guilt of the greater offense' [citation] *but not the lesser*" [citation].' [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 366.) "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given. [Citations.]"

(*People v. Breverman* (1998) 19 Cal.4th 142, 154-155 (*Breverman*).)[2]

As relevant here, felony elder abuse occurs when "[a] person who knows or reasonably should know that a person is an elder . . . and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain . . . ." (§ 368, subd. (b)(1).)

Misdemeanor elder abuse occurs when a person with such knowledge "willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain . . . ," but does so "under circumstances or conditions other than those likely to produce great bodily harm or death." (§ 368, subd. (c).) Misdemeanor elder abuse is a lesser included offense of felony elder abuse. (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.)

"In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Breverman, supra*, 19 Cal.4th at p. 162.) The evidence is viewed in the light most favorable to the defendant. (*People v. Turk* (2008) 164 Cal.App.4th 1361, 1368, fn. 5).

Defendant testified that he did not touch Yang, but merely held his cell phone out of her reach as she tried to take it from him while on her tiptoes, and it was her own action which caused her to lose her balance and fall accidentally. He also testified that she did not hit her head, did not hit the wall, and her fall did not cause her pain, as proved by the game he played of taking her

---

[2] The trial court asked counsel whether there was "any issue about instructing on a lesser included here or no." Both counsel said they saw no need for one.

cell phone to the back yard and then the front yard, and watching her run to fetch it each time. He also suggested that she had a preexisting back injury. In essence, defendant described an event which he did not willfully cause or permit, and he essentially asserted that he did not willfully cause, permit, or inflict pain. Under defendant's version of the event there is no substantial evidence of either the greater or the lesser offense. If the jury had been instructed with misdemeanor elder abuse and had believed defendant's testimony, the result would be acquittal, not a conviction of misdemeanor elder abuse. Defendant's testimony thus did not provide substantial evidence justifying the instruction.

Defendant argues that the version of events given by Yang provided substantial evidence to support an instruction on misdemeanor elder abuse because the jury could have found that a single push which caused her to fall on thick carpet was unlikely to produce great bodily injury. Defendant accomplishes this by combining parts of his testimony with parts of Yang's testimony. Yang testified that defendant pushed her with both hands against her shoulders with such force that she hit the wall behind her, while defendant testified that he did not push her at all. Defendant did not testify that the push was not forceful; indeed, there was no evidence that the push lacked force, rather that there was no push, forceful or otherwise. Defendant's testimony that Yang fell on carpet did not provide evidence that a *push* caused her to fall on carpet. Defendant's argument, rather, relies on the *absence* of evidence. We reject any suggestion that the absence of evidence can somehow be substantial evidence.

The trial court did not err, but if it had erred, we would find the error harmless. "'The erroneous failure to instruct on a

9

lesser included offense generally is subject to harmless error review under the standard of *People v. Watson* (1956) 46 Cal.2d 818, at pages 836-837.  Reversal is required only if it is reasonably probable the jury would have returned a different verdict absent the error or errors complained of.  [Citations.]' [Citations.]"  (*People v. Prince* (2007) 40 Cal.4th 1179, 1267; see also *Breverman*, *supra*, 19 Cal.4th at p. 163.)  "Appellate review under *Watson, . . .* focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration.  In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result."  (*Breverman*, *supra*, at p. 177.)

True findings on special allegations can demonstrate that the failure to instruct on a lesser included offense was harmless.  (*People v. Hughes* (2002) 27 Cal.4th 287, 368, citing *People v. Guiton* (1993) 4 Cal.4th 1116, 1130; see *People v. Sedeno* (1974) 10 Cal.3d 703, 721.)  While not conclusive, it may be inferred from the jury's finding that Yang suffered great bodily injury, that the force used was sufficient or likely to cause great bodily injury.  (See *People v. McDaniel* (2008) 159 Cal.App.4th 736, 748.)  Moreover, as the jury found that Yang suffered great bodily injury which defendant *personally inflicted*, it follows that the jury necessarily rejected the entirety of defendant's version of the incident.

Observing that the prosecutor argued that any absence of intent to injure Yang did not matter, defendant contends that the

absence of intent is evidence that the force used was unlikely to cause great bodily injury.  We agree that felony elder abuse is not a specific intent crime.  (*People v. Thiel* (2016) 5 Cal.App.5th 1201, 1213.)  However, we do not agree that the absence of a non-element is somehow evidence.  Furthermore, the only evidence of defendant's lack of intent to injure Yang was his testimony that he did not push her at all, not that he used force not likely to produce great bodily harm.

Since we conclude that the evidence supporting the judgment is strong, and the evidence supporting a different result is comparatively weak or nonexistent, we discern no reasonable probability that the absence of an instruction regarding the lesser included offense could have affected the outcome.  If the trial court had erred, therefore, the error would be harmless.  (See *Breverman, supra,* 19 Cal.4th at p. 177.)

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

11