Filed 11/7/25  P. v. Mudashiru CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OLUWATOYIN MUDASHIRU,<br><br>Defendant and Appellant. | C100143<br><br>(Super. Ct. No. 20FE012871) |

A jury found defendant Oluwatoyin Mudashiru guilty of two counts of felony elder abuse (Pen. Code, § 368, subd. (b)(1) – counts 1 and 3; undesignated statutory references are to the Penal Code) and one count of involuntary manslaughter (§ 192, subd. (b) – count 2), as to victim Loretta W.  As to the first count of elder abuse, the jury also found true the allegation that the abuse caused the victim's death.  (§ 368, subd. (b)(3)(A).)  On appeal, defendant does not challenge either conviction related to causing Loretta's death.  Rather, she challenges only the elder abuse conviction based on her conduct in the days leading up to the victim's death.  As to that conviction, she contends (1) there was insufficient evidence to sustain the conviction, and (2) the trial court erred

1

in failing to instruct the jury on the lesser included offense of misdemeanor elder abuse. We disagree and affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

In 2018, defendant began working as a full-time live-in caregiver at a small, assisted living facility for the elderly operated by Patrick A. in Sacramento. Loretta moved into that facility that same year. Loretta was diagnosed with mental illness years earlier and by 2020, her health had seriously deteriorated. She was frail with little strength, was bed-ridden, had difficulties carrying on a conversation, and relied on others for her bathroom needs and feeding. Defendant was the only live-in caregiver at the facility, providing care for six residents, including Loretta.

Silent video recordings showed defendant's physical and verbal abuse of Loretta between July 27 and August 10, 2020. This conduct included several instances where defendant appeared to yell at Loretta, at times inches from her face. On three instances defendant appears to have spit in Loretta's face and at other times defendant appears to have forced liquid or food into Loretta's mouth, one time pushing her whole head back with a cup hard enough to push the wheelchair backwards, and another time causing Loretta to spit up or vomit.

Several times, defendant suddenly pushed Loretta forward in her wheelchair by using her hand to forcefully push Loretta in the back or on the back of Loretta's head. At times, defendant slapped or hit Loretta in the face with her fingers, a closed fist, the back of her hand, or with an open palm, sometimes hard enough to cause her wheelchair to move backward. Loretta, a much smaller woman than defendant, put up no resistance during these episodes.

The morning of August 11, 2020, defendant called Patrick and told him he needed to come to the home "right now" because Loretta was unresponsive. Patrick said he was about three minutes away and told her to call 911.

Upon arriving, Patrick found defendant in Loretta's bedroom administering CPR to Loretta, who was lying on her bed. Patrick noted that Loretta's leg felt cold and she was not breathing. Patrick asked defendant if she had called 911. When defendant said she had not, Patrick rushed out of the room to call 911. At the direction of the 911 dispatcher, Patrick and defendant moved Loretta to the floor and Patrick began administering CPR. Paramedics arrived about four minutes later and pronounced Loretta dead at the scene. She was 66 years old at the time.

Patrick eventually asked defendant what had happened. Defendant said that she put Loretta to bed before 8:00 p.m., checked on Loretta once during the night, and then found Loretta unresponsive and on the ground in the morning.

The chief forensic pathologist with the Sacramento County Coroner's Office, Dr. Jason Tovar, testified to the results of Loretta's autopsy. The autopsy showed that Loretta had a number of internal injuries, including bruising and bleeding under the scalp and hemorrhaging in the neck, back, and shoulder areas. Dr. Tovar opined that Loretta's injuries were consistent with blunt force being applied or with Loretta being held down by her back or shoulders. Dr. Tovar further opined that Loretta's neck injuries were caused by compression to her neck, consistent with someone using their hands in a C-shape, and that pressure was applied to her neck until she stopped breathing, causing her death sometime between 4:00 a.m. and 8:00 a.m. on August 11, 2020. Dr. Tovar could not determine whether the injuries to Loretta's head, back, and shoulders happened at the same time as the injuries to her neck. However, he agreed that they could have been a few days old and were consistent with a frail woman being slapped in the head or hit in the back while sitting in a wheelchair.

An amended information charged defendant with one count of elder abuse and one count of involuntary manslaughter for her conduct on or about August 11, 2020 (counts 1 and 2), and one count of elder abuse for her conduct on or about and between July 29, 2020, and August 10, 2020 (count 3). The amended information further alleged multiple

3

aggravating circumstances with respect to both elder abuse counts, specifically that (1) the crimes "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness," (Cal. Rules of Court, rule 4.421(a)(1); rule references that follow are to the California Rules of Court); (2) the victim "was particularly vulnerable," (rule 4.421(a)(3)); and (3) the defendant "took advantage of a position of trust or confidence to commit the offense," (rule 4.421(a)(11)).

The jury convicted defendant on all three counts and found that defendant personally and proximately caused Loretta's death within the meaning of section 368, subdivision (b)(3). As to both elder abuse counts, the jury also found all the aggravating circumstances under rule 4.421(a) true.

The trial court sentenced defendant to four years on the conviction for elder abuse alleged in count 1 (§ 368, subd. (b)(1)), plus five years for proximately causing Loretta's death (§ 368, subd. (b)(3)(A)), and a consecutive one-year on the conviction for elder abuse alleged in count 3, for an aggregate term of 10 years. On the involuntary manslaughter conviction, the court imposed and stayed a four-year term under section 654. Defendant timely appealed.

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant challenges the sufficiency of the evidence to support her conviction for elder abuse alleged in count 3. She argues there was insufficient evidence that her conduct on or about July 29, 2020, to August 10, 2020, the days leading up to Loretta's death, was committed under circumstances or conditions likely to cause great bodily harm or death. Defendant does not contest the sufficiency of the evidence as to any other element in count 3.

4

"When considering a challenge to the sufficiency of the evidence to support a criminal conviction, we review the whole record in the light most favorable to the verdict, drawing all inferences that reasonably support it, and determine whether it contains substantial evidence—that is, evidence which is reasonable, credible, and of solid value—from which a trier of fact could rationally find the defendant guilty beyond a reasonable doubt. [Citations.] In making this determination, we do not reweigh the evidence, resolve conflicts in the evidence, draw inferences contrary to the verdict, or reevaluate the credibility of witnesses." (*People v. Little* (2004) 115 Cal.App.4th 766, 771.) " 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' " (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1332 (*Racy*).) "However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from evidence rather than a mere speculation as to probabilities without evidence.' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

A defendant is guilty of felony elder abuse when he or she "knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1).) Whether an injury is inflicted under circumstances or conditions likely to produce great bodily injury is a question for the trier of fact. (*People v. Clark* (2012) 201 Cal.App.4th 235, 243-245 (*Clark*) [discussing and applying the great bodily injury requirement of the felony elder abuse and felony child abuse statutes similarly]; see also *Racy*, *supra*, 148 Cal.App.4th at p. 1335 [noting that the language of the felony elder abuse statute derives verbatim from the felony child abuse statute].)

5

"Great bodily injury" is harm that is significant or substantial and does not refer to trivial or insignificant injury. (§ 368, subd. (b)(2) [referring to § 12022.7 for definition of great bodily injury]; § 12022.7 [defining great bodily injury as "a significant or substantial physical injury"]; *People v. Cortes* (1999) 71 Cal.App.4th 62, 80 (*Cortes*).) An elder abuse conviction does not require actual harm or injury; rather it requires that great bodily injury or harm were likely, under the circumstances or conditions. (*Roman v. Superior Court* (2003) 113 Cal.App.4th 27, 35.) "Likely" in this context means a substantial danger or a serious and well-founded risk. (*Clark*, *supra,* 201 Cal.App.4th at p. 245.)

In determining whether circumstances or conditions are such that great bodily injury is likely to result, the jury may consider "(1) the characteristics of the victim and the defendant, (2) the characteristics of the location where the abuse took place, (3) the potential response or resistance by the victim to the abuse, (4) any injuries actually inflicted, (5) any pain sustained by the victim, and (6) the nature of and amount of force used by the defendant." (*Clark*, *supra,* 201 Cal.App.4th at p. 245, fn. omitted.) To convict a defendant of elder abuse, the jury is not required to unanimously agree on one circumstance or condition likely to produce great bodily harm or death. (*Racy*, *supra*, 148 Cal.App.4th at p. 1334.)

Here, a rational juror could have found that under the totality of the circumstances and conditions, defendant's conduct in the days leading up to Loretta's death created a substantial danger of great bodily injury to the victim or that defendant's actions actually caused great bodily injury. Specifically, a rational juror could have found that Loretta's frail state and the nature and amount of force applied by defendant made it likely that Loretta would suffer great bodily injury due to defendant's conduct. The jury heard extensive testimony regarding Loretta's weakened state and viewed numerous video clips showing defendant's physical abuse of Loretta in the days leading up to her death. While defendant's actions might not result in great bodily injury to a younger and healthier

6

adult, Loretta's age and seriously deteriorated physical condition made her especially vulnerable. She was frail, bed-ridden, and had little strength. And her age created an increased risk of bone fractures from a fall. (See *Racy*, *supra*, 148 Cal.App.4th at p. 1333 [it is a matter of common knowledge that age carries with it an increased risk of bone fractures from a fall].) Given these circumstances, defendant repeatedly suddenly and forcefully pushing Loretta forward in her wheelchair and slapping or hitting her in the face could have caused Loretta to fall out of her wheelchair and hit the ground, causing her to break a bone or other substantial injury. (See *ibid*. [force likely could have caused the victim to fall and suffer great bodily harm, given victim's advanced age and physical condition].) Defendant's actions also created a risk of choking, given that Loretta was frequently being fed when defendant used force against her, and at times defendant appeared to force liquids or food into Loretta's mouth. Indeed, the videos showed at least once defendant spit up or vomited during feeding. A reasonable juror could find that this choking risk presented a substantial danger of great bodily injury.

A rational juror could have also found that defendant's repeated pushing of Loretta in the back or head or slapping and hitting Loretta in the face directly caused great bodily injury. Loretta had bruising and hemorrhaging under her scalp and on her back and shoulders, which the pathologist testified could have been caused by Loretta being slapped in the head or back a few days before her death. While defendant minimizes the victim's injuries, the forensic evidence was more than enough for a juror to find that these injuries were significant or substantial. (See *Cortes*, *supra,* 71 Cal.App.4th at p. 80 [great bodily injury is harm that is significant or substantial and not trivial or insignificant].) Overall, the evidence was sufficient to support the jury's conviction on count 3.

## II

### *Lesser Included Offense Instruction*

Defendant also argues the trial court prejudicially erred by failing to instruct the jury on the lesser included offense of misdemeanor elder abuse.

"A trial court has a sua sponte duty to 'instruct on a lesser offense necessarily included in the charged offense if there is substantial evidence the defendant is guilty only of the lesser.' [Citation.]  Substantial evidence in this context is evidence from which a reasonable jury could conclude that the defendant committed the lesser, but not the greater, offense.  [Citation.]. . . .  [T]he court need instruct the jury on a lesser included offense only '[w]hen there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of' the lesser offense."  (*People v. Shockley* (2013) 58 Cal.4th 400, 403-404.)  "We review the trial court's failure to instruct on a lesser included offense de novo [citations] considering the evidence in the light most favorable to the defendant."  (*People v. Brothers* (2015) 236 Cal.App.4th 24, 30.)

A defendant is guilty of misdemeanor elder abuse when he or she "knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions other than those likely to produce great bodily harm or death, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering."  (§ 368, subd. (c).)  "[T]he difference between felony elder abuse and misdemeanor elder abuse is whether the abuse is perpetrated 'under circumstances or conditions likely to produce great bodily harm or death.'  If it is, the crime is a potential felony.  (§ 368, subd. (b)(1).)  If it is not, the crime is a misdemeanor.  (§ 368, subd. (c).)  Misdemeanor elder abuse is a lesser included offense of felony elder abuse."  (*Racy*, *supra*, 148 Cal.App.4th at pp. 1334-1335.)

"In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818, which requires

8

reversal of the conviction for the greater offense 'if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' (*People v. Breverman*[ (1998)] 19 Cal.4th [142,] 178[ (*Breverman*)].)  Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' " (*Racy*, *supra*, 148 Cal.App.4th at p. 1335.)

In this case, we do not need to separately analyze whether the court erred in failing to instruct the jury on the lesser included offense of misdemeanor elder abuse, because we conclude an error, if any, was harmless.  As discussed above, for the jury to conclude that defendant committed the lesser offense of misdemeanor elder abuse but not the greater offense of felony elder abuse, it would have to find that defendant acted under circumstances other than those likely to produce great bodily harm.  (§ 368, subd. (c).)  However, in addition to finding defendant guilty on count 3, the jury separately found true the aggravating circumstances that (1) the victim was *particularly* vulnerable and (2) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, vicious, or callousness.

In order to find the latter aggravating circumstance true, the jury had to find that the defendant "[d]uring the commission of the crimes [] used great violence, inflicted great bodily harm or committed other acts showing a high degree of . . . callousness" and "[t]he type of violence, bodily harm or cruelty, viciousness or callousness was distinctively worse than what was necessary to commit the crimes."  The jury was further instructed that in this context, " '[v]iciousness' means dangerously aggressive or marked by violence or ferocity" and that "[a]n act discloses cruelty when it demonstrates a deliberate infliction of [] physical or mental suffering."

Based on the jury's additional findings regarding the aggravating circumstances and the evidence in this case showing that Loretta suffered significant injuries due to blunt force, it was not reasonably probable that the jury would have found defendant

9

acted under circumstances other than those likely to produce great bodily harm. (Cf. *Racy*, *supra*, 148 Cal.App.4th at pp. 1334-1336 [jury could have found that a large older man with physical limitations was not likely to suffer great bodily injury from single stun gun shock to leg where he retreated, made a 911 call, and emerged "unscathed"].) Loretta was a frail, bed-ridden elderly woman. As the videos depicted, defendant was younger, bigger, and stronger than Loretta. The jury saw the numerous times defendant aggressively pushed and hit a defenseless and frail woman, sometimes hard enough to force her wheelchair backwards, and heard evidence that the victim suffered bruising and hemorrhaging under her scalp and on her back and shoulders, injuries consistent with a woman in a wheelchair being slapped in the head or hit in the back. Loretta offered no resistance to defendant's assaults, not putting her hands up to defend herself or even flinching away.

Based on the evidence and the jury's findings, it was not reasonably probable that defendant would have been convicted of misdemeanor elder abuse and not felony elder abuse had the misdemeanor instruction also been given, and any instructional error was therefore harmless. (See *Breverman*, *supra*, 19 Cal.4th at p. 178.)

## DISPOSITION

The judgment is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
RENNER, J.

_____
MESIWALA, J.

10