Filed 3/1/21  P. v. Mason CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>NATHAN JEROME MASON,<br><br>　　　Defendant and Appellant. | B296701<br><br>(Los Angeles County<br>Super. Ct. No. YA098903) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Hector M. Guzman, Judge.  Affirmed.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, David E. Madeo and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

## INTRODUCTION

A jury convicted Nathan Jerome Mason of shooting at an inhabited dwelling, two counts of assault with a semiautomatic firearm with an enhancement for personal use of a firearm, discharge of a firearm with gross negligence, making a criminal threat, and possession of a firearm by a felon. Mason contends the trial court prejudicially erred by failing to instruct the jury on grossly negligent discharge of a firearm as a lesser included offense of shooting at an inhabited dwelling and failing to instruct the jury on self-defense on the assault charges and the shooting at an inhabited dwelling charge. Mason also argues his attorney denied him effective assistance of counsel by failing to request self-defense instructions and failing to object when the trial court removed the self-defense instructions.

Mason's claims of instructional error rest on his testimony denying the relevant events occurred and proffering a different version of the events. Mason's version does not support the instructions Mason claims the trial court improperly omitted. Even if it did, any error in failing to instruct on the lesser included offense and self-defense was harmless in light of the extensive evidence of Mason's guilt. Mason also has not demonstrated that his counsel rendered him ineffective assistance warranting reversal. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

A.    *The Charges*

The Los Angeles County District Attorney charged Mason with shooting at an inhabited dwelling (Pen. Code, § 246,[1]

---

[1]    Statutory references are to the Penal Code.

count 1), two counts of assault with a semiautomatic firearm (§ 245, subd. (b), counts 2 and 3) with personal use of a firearm (§ 12022.5, count 2), discharge of a firearm with gross negligence (§246.3, subd. (a), count 4), two counts of making criminal threats (§ 422, subd. (a), counts 5 and 6), and possession of a firearm by a felon (§ 29800, subd. (a)(1), count 7).  Mason pleaded not guilty to the charges and denied the special allegations.  The trial court granted the prosecution's motion to amend the information to add an allegation on count 3 that Mason personally used a firearm (§ 12022.5).

B.    *The Prosecution Case*

1.    *The Initial Altercation and Gunshots*

Around 11:00 p.m. on September 16, 2018, Willie Sutton and his fiancée Shauntail Smith heard people arguing and swearing outside their ground floor apartment.  Sutton went outside to the apartment complex courtyard and observed Mason arguing with a woman Sutton did not know and Anthony Lee, a man Sutton recognized as someone who lived across the street.

Sutton and Smith knew Mason, who lived upstairs from them in the same apartment complex.  They had never had any arguments or previous incidents with him.  Lee did not know Mason before that night.

Sutton observed the argument between Mason and the two others escalate into a physical fight.  Sutton saw Mason punch the woman more than once with his fist and push Lee aside.  Mason, Lee, and the woman then went outside the courtyard to the front of the apartment complex.  Sutton returned to his apartment.  About 10 minutes later, Sutton and Smith heard three to five gunshots.

3

Lee testified he was coming down the front steps of the apartment complex when he saw Mason and a woman enter through the front gate. Mason began arguing with a second woman sitting on the steps. The argument escalated into a physical fight in the courtyard, and Mason began hitting the woman in the face with his closed fist. Lee attempted to intervene to protect the woman, but "got brushed up against the wall and got [his] forearm cut." Lee saw Sutton enter the courtyard and begin speaking with Mason.

Lee returned across the street to his apartment courtyard. He saw the woman Mason had beaten leave in a car; her mouth was bloodied. Lee then observed Mason walk upstairs in the apartment complex. About five minutes later, Lee saw Mason return to the curb in front of the complex with a gun and shoot in the air four or five times. Nobody else was present, and Mason did not appear to be shooting at anyone.

2.   *The Second Altercation and Gunshot*

After hearing the gunshots, Sutton and Smith went outside and saw Mason walk into the apartment courtyard holding a black semiautomatic handgun. Mason brushed past Sutton. Sutton told Mason, "You don't need to be firing the guns off, especially if you ain't shooting nobody." Mason continued upstairs towards his apartment, and Sutton and Smith returned to their apartment.

Shortly thereafter, Mason returned and banged on Sutton and Smith's door. The apartment had an inner wooden door and an outer metal mesh security screen door. Sutton opened the wooden door, and he and Smith saw Mason outside the locked security screen. Smith thought Mason appeared drunk and "seemed to be in an uproar." Sutton thought Mason was "on

4

some type of drug." Mason asked Sutton whether the people Mason had encountered outside were "[his] people"; Sutton said no, opened the screen door and stepped out, and told Mason to "get the fuck away from my door."

When Sutton stepped out, Mason "sucker punched" him in the jaw. Sutton stepped back into the apartment to put on his shoes. Smith stood in the doorway trying to keep the men separated as Mason continued "cussing and fussing" outside the door. Smith grabbed a stick about three feet long and three-quarters of an inch wide, and when Mason took a step backwards and reached towards his waistband, she hit him on the head, thinking he might still have his gun.

Sutton saw Mason about to "swing back" at Smith, and the men fought and wrestled in the courtyard for about 10 minutes. Both men were injured in the fight. Mason was also injured when Smith hit him with the stick.

Following the fight, Sutton and Smith returned to their apartment. Mason addressed them through the screen door again, and said, "I'm going to get you," and "I got something for you, nigga, and you too, bitch."

Mason returned about a minute later and knocked on Sutton and Smith's security screen door again. He told Sutton to come outside because "he's got something for him." Mason was holding a black semiautomatic handgun in his hand. Through the screen door, Sutton said, "What, you gonna shoot me?" Mason replied, "Yeah, you and your bitch."

When Mason appeared at their door, Smith was on the telephone with 911, having already called 911 because she believed Mason intended to return and shoot them. Smith's roommate, Sheri Hunter, was also present and assisted Smith

with the 911 call. As Smith and Hunter spoke to the 911 dispatcher, Mason raised his right hand and fired the gun through the closed security screen door into the apartment from a distance of 20 to 22 feet. The bullet left a hole in the metal mesh screen and "ricocheted" into the partially-open wooden door, leaving a raised strike mark. The bullet passed within about a foot of Smith and missed Sutton by a few inches.

The prosecution played a recording of the 911 call at trial. Smith told the dispatcher that "this guy . . . from upstairs, got a, got a gun and he's shootin'," and Sutton in the background yelled, "He's been outside shooting a gun. . . ." Then Smith exclaimed, "He's shooting. He's shooting. He's shooting now. He's shooting. . . . He's shooting. . . . Please hurry up and send the police. . . . He's shooting in my house. . . . He's shooting in my house." Smith testified that the shot came through the apartment door at this point in the call. Sutton in the background stated, "He just shot through our door. He just shot in my house."

Smith described Mason to the dispatcher and explained that "he just shot, . . . before he came knocking at my door starting trouble, he was outside jumping on some other girl that he didn't even know from a can of paint and then start shooting his gun outside here. And then he come[s] to my house and start . . . shot up in house after he came and start a fight at my house that we didn't have nothing to do with . . . ." Smith stated, "And I got the bullet proof in the door right now, ma'am." The dispatcher responded, "I heard the shot."

After Los Angeles County Sheriff's deputies arrived, Mason refused to leave his apartment for approximately five hours. Deputy Francisco Velasquez testified that Smith and Sutton

seemed "shooken [*sic*] up a little bit" when he arrived. Velasquez found five spent nine-millimeter shell casings imprinted with the word "Hornady" in front of the apartment complex and one spent shell casing with the same "Hornady" label approximately 15 feet from Sutton and Smith's door. Velasquez observed a hole in the metal mesh door and a defect in the wooden door, but did not find a bullet in the wooden door or nearby.

After Mason surrendered, Velasquez found a box of nine-millimeter Hornady brand ammunition and a black nine-millimeter semiautomatic handgun loaded with Hornady brand ammunition in Mason's bedroom. He also found an unfired Hornady bullet on Mason's washer/dryer.

C.    *The Defense Case*

Mason was the sole defense witness. Mason testified he broke up an altercation between his girlfriend and another woman in the courtyard of his apartment complex. According to Mason, Sutton stood on his porch during the argument. As Mason returned to his apartment, Sutton approached him, said "don't be fucking with my people," and "socked" Mason in the face. Sutton told Mason the woman was angry with Sutton because Sutton had not extended her credit to buy drugs. Mason denied hitting the woman or seeing Lee, denied going to Sutton and Smith's door, and denied hitting Sutton first.

Mason testified he and Sutton began fighting after Sutton punched him, and that during the fight, Smith emerged from the apartment and struck him several times in the head with a bat, knocking him unconscious. When he regained consciousness, Sutton was kicking him and Smith was still hitting him with the bat.

Mason testified he stood up and backed out the front gate of the apartment complex away from Sutton and Smith, remembered he had his gun, took it out, and shot in the air three or four times. Mason denied shooting through Sutton and Smith's screen door or firing any shot inside the apartment courtyard.

Mason injured his arm blocking the bat. He received 16 staples in his head and suffered an eye injury and a fractured arm.

D. *The Jury Instructions*

At the outset of trial, the trial court distributed draft jury instructions to counsel. The trial court asked defense counsel to consider whether the evidence supported any lesser included offenses and to review the self-defense instructions, which were incomplete.

Before Mason testified, the court and counsel discussed the instructions. The court stated it would wait to see whether the self-defense instructions would apply. Regarding the charge for Mason's alleged shooting into Sutton and Smith's apartment, defense counsel requested an instruction on the lesser included offense of grossly negligent discharge of a firearm. The trial court asked, "So we need to give the *Stone* instruction? I hate giving that instruction." (See *Stone v. Superior Court* (1982) 31 Cal.3d 503, 519; CALCRIM No. 3517 [jury instruction for use when lesser included and greater offenses are not separately charged].) Defense counsel responded, "[I]t's not mandatory to give an instruction on a lesser;" "the court can say [Mason] either shot at an inhabited dwelling or he didn't;" and "there's significant evidence that he shot at an occupied dwelling with the gun, which subsumes the lesser." Defense counsel ultimately

8

asked that the court hold the lesser included offense instruction in abeyance.[2]

After the close of evidence, the trial court stated that the self-defense element should be removed from the instruction on assault with a deadly weapon (CALCRIM No. 875) because the court "can't see how that now applies, based on Mr. Mason's testimony." The court asked defense counsel, "Do you think it should remain in?," and expressed its view that Mason's testimony did not support self-defense. The trial court stated that it had "looked at [the evidence] from every different angle," and that although "it's possible" defense counsel could argue self-defense, doing so would be "unproductive."

Defense counsel stated, "I understand what the court is saying." Defense counsel did not object to removal of the self-defense element in CALCRIM No. 875. Defense counsel also did not object to removal of the self-defense element from the instructions on shooting at an inhabited dwelling (CALCRIM No. 965) and grossly negligent discharge of a firearm (CALCRIM No. 970), or to removal of CALCRIM No. 3470 [right to self-defense], CALCRIM No. 3472 [no right to self-defense if fight provoked as excuse to use force], and CALCRIM No. 3474 [no right to self-defense after danger no longer exists] from the instructions. The court and counsel did not revisit including the lesser included offense instruction on the shooting at an

---

[2]    The court and counsel also discussed that the prosecution had charged the two alleged shootings separately. The prosecution confirmed its position that the first shooting outside in the air was negligent discharge of a firearm (count 4) and the shooting into Sutton and Smith's apartment was discharging a firearm at an inhabited dwelling (count 1).

9

inhabited dwelling charge, and the court did not instruct the jury on the lesser included offense on that charge.

During closing arguments, the prosecutor stated that the instructions did not include self-defense instructions because self-defense did not apply. Defense counsel objected, and the trial court sustained the objection. Defense counsel did not argue self-defense in her closing argument.

E. *The Verdict and Sentencing*

During deliberations, the jury asked whether it could "incorporate acts of self-defense with respect to determining our verdict." Both sides agreed to the trial court's suggested response: "No, self-defense is not an issue to be considered by you in this case."

The jury found Mason guilty on all counts other than one of the two counts of making criminal threats.[3] The trial court sentenced Mason to 15 years four months in prison: six years for assault with a semiautomatic firearm, plus four years for personal use of a firearm; a consecutive term of two years (one-third the middle term) on the second assault with a semiautomatic firearm, plus one year four months (one-third the middle term) for personal use of a firearm; a consecutive term of eight months (one-third the middle term) for grossly negligent discharge of a firearm; a consecutive term of eight months (one-third the middle term) for making a criminal threat; and a consecutive term of eight months (one-third the middle term) for illegal possession of a firearm by a felon. The court imposed a

---

[3] The jury found Mason guilty of making a criminal threat against Smith and not guilty of making a criminal threat against Sutton.

sentence of five years for the shooting at an inhabited dwelling charge, but stayed it pursuant to section 654.

## DISCUSSION

Mason argues the trial court should have instructed the jury sua sponte on grossly negligent discharge of a firearm as a lesser included offense of shooting at an inhabited dwelling and on self-defense on the assault and shooting at an inhabited dwelling charges. Mason also argues his attorney denied him effective assistance of counsel by failing to request self-defense instructions and failing to object to the trial court's removal of those instructions.

### A. *Standard of Review*

"[T]he rules regarding when a trial court has a sua sponte duty to instruct differ according to whether the instruction relates to a lesser included offense or to a defense. As to lesser included offenses, the court must instruct . . . whenever there is substantial evidence to support the instruction." (*People v. Elize* (1999) 71 Cal.App.4th 605, 615 (*Elize*).) As to defenses, "a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' [Citation.]." (*People v. Breverman* (1998) 19 Cal.4th 142, 157 [italics in original] (*Breverman*); accord, *Elize*, at p. 615; *People v. Barton* (1995) 12 Cal.4th 186, 195, 199 (*Barton*) [discussing "trial court's broad duty to instruct on lesser included offenses and its narrower obligation to instruct on particular defenses"].)

"'On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included

offense.'" (*People v. Walker* (2015) 237 Cal.App.4th 111, 115, quoting *People v. Souza* (2012) 54 Cal.4th 90, 113.) We likewise independently review whether the trial court improperly failed to instruct on a defense. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 806; *People v. Shelmire* (2005) 130 Cal.App.4th 1044, 1055.)

B.  *Any Error in Failing To Instruct on the Lesser Included Offense Was Harmless*

Grossly negligent discharge of a firearm is a necessarily included offense of shooting at an inhabited dwelling. (*People v. Ramirez* (2009) 45 Cal.4th 980, 983 (*Ramirez*).) Mason argues the trial court should have instructed the jury on the lesser included offense of grossly negligent discharge of a firearm because Mason's testimony was substantial evidence supporting the lesser included instruction.

"A trial court must instruct on a lesser included offense if there is substantial evidence from which a reasonable jury could conclude the defendant is guilty of the lesser offense, but not the charged offense." (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335 (*Racy*), citing *Breverman, supra,* 19 Cal.4th at p. 162.) "'"Substantial evidence" in this specific context is defined as evidence which is "sufficient to 'deserve consideration by the jury, i.e., "evidence from which a jury composed of reasonable men [and women] could have concluded"' that the particular facts underlying the instruction did exist." [Citations.]'" (*People v. Lemus* (1988) 203 Cal.App.3d 470, 477 (*Lemus*).)

"In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Breverman, supra,* 19 Cal.4th at p. 177.) Accordingly, "in determining whether the record contains substantial evidence

of a lesser included offense, the court should not consider the credibility of witnesses, instead leaving credibility determinations for the jury." (*Elize, supra,* 71 Cal.App.4th at p. 615.)

"The testimony of a single witness, including the defendant, can constitute substantial evidence requiring the court to instruct on its own initiative. [Citations.]." (*People v. Lewis* (2001) 25 Cal.4th 610, 646.) "Even if it does not inspire confidence, a defendant's testimony constitutes substantial evidence." (*People v. Mejia-Lenares* (2006) 135 Cal.App.4th 1437, 1446; see also *People v. Melton* (1988) 44 Cal.3d 713, 746 ["[t]hough it hardly inspired confidence, defendant's testimony was substantial evidence in support of a verdict of theft rather than robbery"].)

The elements of shooting at an inhabited dwelling are (1) acting willfully and maliciously and (2) shooting at an inhabited house. (§ 246; *Ramirez, supra,* 45 Cal.4th at p. 985; CALCRIM No. 965.) Grossly negligent discharge of a firearm requires (1) intentionally shooting a firearm; (2) with gross negligence; (3) in a manner that could have resulted in the injury or death of a person. (§ 246.3, subd. (a); *Ramirez,* at pp. 989-990; CALCRIM No. 970.) The Supreme Court has explained that the elements of the two offenses are functionally similar, both are general intent crimes, and that "the basis for the more serious treatment of a section 246 offense, is that the greater offense requires that an inhabited dwelling or other specified object be within the defendant's firing range." (*Ramirez,* at p. 990.)

Mason testified he fired his gun in the air three or four times outside the front gate of the apartment complex to stop Sutton and Smith's attack. He denied seeing Lee, denied

13

shooting into Sutton and Smith's apartment, and denied firing any shot in the apartment complex courtyard. Had the jury believed Mason, the shooting Lee witnessed did not occur, the shooting into Sutton and Smith's door did not occur, and Mason fired outside the apartment complex with Sutton and Smith nearby.

In isolation, Mason's version could be consistent with grossly negligent discharge of a firearm. His version is not consistent, however, with grossly negligent discharge of a firearm as a lesser included offense of shooting at an inhabited dwelling as charged here. A defendant is entitled to an instruction on a lesser included offense if "'there is evidence which, if accepted by the trier of fact, would absolve [the] defendant from guilt of the greater offense' [citation] but not the lesser. [Citations.]." (*People v. Memro* (1995) 11 Cal.4th 786, 871.) Mason denied firing his gun inside the apartment courtyard at all, much less near Sutton and Smith's door. Thus, even if the jury believed Mason, his testimony did not describe a grossly negligent shooting at or near Sutton and Smith's door. Mason described a different shooting in a different location. The trial court thus did not err in not instructing on the lesser included offense.

Even if Mason's testimony warranted such an instruction, any error in failing to instruct on the lesser included offense does not require reversal of Mason's shooting at an inhabited dwelling conviction. "[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under *Watson*." (*Breverman, supra,* 19 Cal.4th at p. 178.) Under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), the conviction on the greater offense

14

should be reversed only "if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman,* at p. 178; accord, *People v. Gonzalez* (2018) 5 Cal.5th 186, 191 [failure to instruct on lesser included offenses "is harmless if defendants cannot demonstrate a reasonable probability that the jury would have—without the error—reached a different result"].) "Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' [Citation.]" (*Racy, supra,* 148 Cal.App.4th at p. 1335, quoting *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 918.)

Mason cannot demonstrate a reasonable probability that the jury would have reached a different result had the trial court instructed on the lesser included offense. As an initial matter, the trial court instructed the jury on grossly negligent discharge of a firearm on count 4. As the parties discussed, that count reflected the prosecution's theory that the first shooting in the air was negligent discharge of a firearm (see footnote 2, *infra*). Had the jury believed Mason that a second shooting did not occur, the jury could have found Mason guilty of grossly negligent discharge of a firearm and not guilty of shooting at an inhabited dwelling under the instructions as given. Although the prosecution did not charge the sections 246 and 246.3 counts as alternate offenses for the same conduct, the separate instruction on grossly negligent discharge of a firearm, as applied to Mason's version of the events, precluded an all-or-nothing choice for the jury and satisfied "[t]he purpose of the sua sponte instructional rule which applies to lesser included offenses[, which] is 'to assure, in the

interest of justice, the most accurate possible verdict encompassed by the charge and supported by the evidence.'" (*Elize, supra,* 71 Cal.App.4th at p. 613, quoting *Breverman, supra,* 19 Cal.4th at p. 161; see also *People v. Eid* (2014) 59 Cal.4th 650, 657 ["The reason for instructing the jury on lesser included offenses is to protect the jury's '"truth-ascertainment function"' and avoid an '""all-or-nothing choice"'" between conviction on a greater offense than warranted or acquittal even though there is sufficient evidence '""to establish a lesser included offense."'"].)

Furthermore, Mason cannot demonstrate a reasonable probability that the jury would have reached a different result had the court given the lesser included instruction. Significant evidence supported the conclusion that Mason fired through Sutton and Smith's door into their occupied apartment, which satisfies a crucial element of shooting at an inhabited dwelling. Sutton and Smith testified that after Sutton and Mason fought, Mason returned to their door with a gun and fired through the closed security screen door from a distance of 20 to 22 feet, leaving a hole in the metal mesh and impacting the interior wooden door. The recording of the contemporaneous 911 call corroborated Sutton and Smith's testimony. Smith and Sutton can be heard describing the events and reacting to the shooting as it occurred, stating, "[h]e's shooting," "[h]e's shooting in my house," and "[h]e just shot through our door. He just shot in my house." The 911 dispatcher stated, "I heard the shot."

The physical evidence Velasquez collected also corroborated Sutton and Smith's testimony. Velasquez found a hole in Sutton and Smith's screen door and a defect in their wooden door. Velasquez also found a Hornady bullet casing 15 feet from Sutton

16

and Smith's front door that matched the ammunition found in Mason's apartment and the five casings found outside the apartment complex.

Given this extensive evidence, even if the trial court had instructed on the lesser include offense, it is not reasonably probable the jury would have concluded Mason did not shoot into the apartment. Any instructional error was harmless.

C. *Any Error in Failing To Instruct on Self-defense Was Harmless*

As noted above, "the scope of the court's duty to instruct varies as between lesser included offenses and defenses." (*Elize, supra,* 71 Cal.App.4th at p. 616.) Although "the sua sponte duty to instruct on all material issues presented by the evidence extends to *defenses* as well as to lesser included *offenses*," the Supreme Court draws "a sharp distinction between the two situations." (*Breverman, supra,* 19 Cal.4th at p. 157.) In the case of defenses, "a sua sponte instructional duty arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.'" (*Ibid.*; accord, *People v. Salas* (2006) 37 Cal.4th 967, 982 (*Salas*) ["a defendant has a right to have the trial court, on its own initiative, give a jury instruction on any affirmative defense for which the record contains substantial evidence," unless the defense is "inconsistent with the defendant's theory of the case"].)

Mason did not rely on a self-defense theory at trial. Defense counsel did not argue self-defense, nor did counsel object to the trial court's statement that self-defense did not apply. To the contrary, in response to the court's statement that arguing self-defense would be "unproductive," defense counsel stated, "I

understand what the court is saying." Defense counsel primarily argued that Mason was voluntarily intoxicated and that no forensic evidence linked the bullet casings to Mason's gun.

Nevertheless, Mason's testimony that he shot his gun in the air upon regaining consciousness and finding Sutton and Smith attacking him was substantial evidence of self-defense. Self-defense applies "when the defendant acts in response to circumstances that cause the defendant to fear, and would lead a *reasonable person* to fear, the imminent infliction of death or great bodily injury (§[§] 197, 198)." (*Barton, supra,* 12 Cal.4th at pp. 199-200.) A defendant's testimony constitutes substantial evidence. (*People v. Mejia-Lenares* (2006) 135 Cal.App.4th 1437, 1446.) As with lesser included offenses, "in determining whether the record contains substantial evidence" of a defense, "the court should not consider the credibility of witnesses, instead leaving credibility determinations for the jury." (*Elize, supra,* 71 Cal.App.4th at p. 615.)

Mason's self-defense testimony does not square with Mason's theory of the case, however. The two assault charges and the shooting at an inhabited dwelling charge arose from the prosecution's contention that Mason fired at the door of Sutton and Smith's occupied apartment. Mason denied that shooting occurred. Mason claimed he fired in the air outside the apartment complex to stop Sutton and Smith's attack. Mason proffered a different series of events from those the prosecution alleged, not an alternative explanation for the apartment shooting. Mason's contention that he fired in self-defense outside the apartment complex is unrelated to, and inconsistent with, his claim that the apartment shooting did not occur.

18

Even if Mason's testimony was consistent with his defense theory, any instructional error was not prejudicial. The Supreme Court "ha[s] not yet determined what test of prejudice applies to the failure to instruct on an affirmative defense." (*Salas, supra,* 37 Cal.4th at p. 984.) Even assuming the more rigorous *Chapman* test applies (see *Chapman v. California* (1967) 386 U.S. 18, 24 [state must prove error harmless beyond a reasonable doubt]), the trial court's failure to instruct on self-defense was harmless beyond a reasonable doubt.

Extensive evidence contradicted Mason's testimony that Sutton attacked Mason first and that Mason only fired his gun after Sutton and Smith attacked him. Sutton and Smith testified they heard noise outside, Sutton saw Mason fighting with Lee and an unknown woman in the courtyard, they heard shots, and they saw Mason enter the courtyard carrying a gun. Shortly afterward, Mason banged on their door, seemingly intoxicated, and "sucker punched" Sutton, resulting in a physical fight between the men and Smith hitting Mason with a stick because she thought he had a gun. Sutton and Smith testified that the fight with Mason occurred after they heard shots in front of the complex, not before, and that they were inside when they heard the shots. Lee testified he saw Mason arguing with a woman and that Lee attempted to intervene. Lee later saw Mason fire into the air outside the complex with nobody else present.

The recording of the contemporaneous 911 call corroborated Sutton and Smith's testimony. They can be heard describing the situation ["this guy . . . from upstairs, got a, got a gun and he's shootin'"] and preceding events ["[h]e's been outside shooting a gun"; "before he came knocking at my door starting trouble, he was outside jumping on some other girl that he didn't even know

19

from a can of paint, and then start shooting his gun outside here"], and narrating the second shooting as it occurred. Velasquez's testimony that Mason refused to leave his apartment for several hours after the police arrived reflects behavior inconsistent with Mason's testimony that he was the victim of an unprovoked attack. The hole in Sutton and Smith's screen door, the damage to their wooden door, and the discovery of a shell casing matching Mason's gun 15 feet from Sutton and Smith's door also support Sutton and Smith's description of the events.

Mason argues that the jury's question during deliberations whether it could "incorporate acts of self-defense with respect to determining [its] verdict" demonstrates that the failure to instruct on self-defense was not harmless error. The jury's question does not establish that a different result would have been reached had the jury been properly instructed. "If that were the standard, any instructional error that elicits a related jury question would be reversible per se, without regard to the evidence. That is not the law." (*People v. Gonzalez,* (2012) 54 Cal.4th 643, 667). "[T]he jurors simply may have failed to recall specifically and completely all the instructions that had been read to them" (*People v. Rogers* (2006) 39 Cal.4th 826, 876), or "[t]he jury may have believed it was missing a necessary instruction, or it may have been confused" (*Gonzalez,* at pp. 666-667), including by the prosecutor's statement during closing argument that self-defense did not apply and defense counsel's successful objection to that argument.

Review of the entire record demonstrates beyond a reasonable doubt that a lack of self-defense instructions did not contribute to the verdict. The consistent testimony of three eyewitnesses, the physical evidence, and the 911 call

20

documenting Smith's and Sutton's contemporaneous description of the events compel a conclusion that any instructional error was harmless beyond a reasonable doubt.

D. *Mason Has Not Demonstrated His Counsel Rendered Ineffective Assistance*

Mason's argument that defense counsel rendered ineffective assistance because she did not request self-defense instructions and did not object to the trial court's removal of the self-defense instructions fails. In assessing claims of ineffective assistance of trial counsel, we consider whether counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and whether the defendant suffered prejudice to a reasonable probability, that is, a probability sufficient to undermine confidence in the outcome. (*Strickland v. Washington* (1984) 466 U.S. 668, 693-694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy. (*Strickland v. Washington,* at p. 689; *In re Andrews* (2002) 28 Cal.4th 1234, 1253-54.) The defendant bears the burden of establishing constitutionally inadequate assistance of counsel. (*Strickland v. Washington,* at p. 687; *In re Andrews*, at p. 1253.) If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

21

The record does not reflect the reason defense counsel did not request self-defense instructions or object to their removal. After the trial court stated that self-defense did not apply, defense counsel responded, "I understand what the court is saying," and did not object when the trial court removed the self-defense instructions. Defense counsel could have concluded that a request for self-defense instructions would be futile following the court's statements that self-defense did not apply and that arguing self-defense would be "unproductive." Alternatively, defense counsel may have concluded that pursuing a self-defense theory would undermine her arguments that Mason was voluntarily intoxicated and that the forensic evidence did not link Mason's gun to the shootings.

Mason has not presented "affirmative evidence that counsel could have had 'no rational tactical purpose' for these decisions." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.) "Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Id.* at 198.)

Even if Mason could establish deficient performance by his counsel, however, he cannot demonstrate a reasonable probability that self-defense instructions would have resulted in a different outcome. (*People v. Mattson* (1990) 50 Cal.3d 826, 876; *People v. Gonzalez* (1998) 64 Cal.App.4th 432, 438.) As detailed above, the record contains ample evidence that Mason hit Sutton first and that following the fight with Sutton, Mason retrieved his gun from his apartment and fired into Sutton and Smith's apartment. Mason has not demonstrated that his trial counsel rendered ineffective assistance warranting reversal.

## DISPOSITION

The judgment is affirmed.


                                    MCCORMICK, J.*

We concur:


PERLUSS, P. J.


SEGAL, J

---

*       Judge of the Orange County Superior Court, assigned by
the Chief Justice pursuant to article VI, section 6 of the
California Constitution.