Filed 8/24/21 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

In re Noah S., a Person Coming Under the Juvenile Court Law

THE PEOPLE,

Plaintiff and Respondent,

v.

NOAH S.,

Defendant and Appellant.

A158575

(Contra Costa County Super. Ct. No. J1800250)

**ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT]**

**THE COURT:**

It is ordered that the partially published opinion filed on August 3, 2021, be modified as follows:

On page 9, in the first full paragraph, change the first part of the sentence that begins "Also after the incident, and for the week or so before she testified, . . . ." to **"For the week or so before she testified, . . . ."**

There is no change in the judgment.

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A, B, C, and D of the Discussion.

Appellant's petition for rehearing is denied.

Dated: 8/24/201 Fujisaki, Acting P.J.

**In re Noah S. (A158575)**

Trial Court: Contra Costa

Trial Judge Hon. John C. Cope

Attorneys:

Amanda K. Roze, under appointment by the First District Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Gregg E. Zywicke, Deputy Attorney General, for Plaintiff and Respondent.

Filed 8/3/21 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Noah S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br>Plaintiff and Respondent,<br>v.<br>NOAH S.,<br>Defendant and Appellant. | A158575<br><br>(Contra Costa County Super. Ct. No. J1800250) |

Noah S. (Minor) appeals after a juvenile court sustained wardship allegations that he committed attempted robbery and elder abuse. On appeal, he argues the evidence fails to support the allegations, the court erroneously failed to specify a maximum term or calculate custody credits and to stay punishment on one of the counts under section 654, and the court erred in concluding the attempted robbery offense fell within Welfare and Institutions Code section 707, subdivision (b).

In the published portion of this opinion, we reject Minor's contention that his attempted robbery adjudication does not fall within Welfare and Institutions Code section 707, subdivision (b). In the unpublished portion of

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts A, B, C, and D of the Discussion.

this opinion, we reject Minor's remaining contentions. We affirm the orders of the juvenile court.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2018, the People filed a juvenile wardship petition charging Minor with over a dozen crimes, such as motor vehicle burglaries and vandalism, in San Mateo County. Minor entered a plea admitting one felony motor vehicle burglary count. (Pen. Code, § 460, subd. (b).[1]) The Superior Court of San Mateo County adjudged him a ward and transferred his case to Contra Costa County prior to his disposition hearing.

While Minor's wardship was ongoing, the People filed a supplemental juvenile wardship petition alleging Minor, who was then 14 years old, committed attempted robbery (§§ 664, 211) and caused or permitted an elder or dependent adult to suffer (§ 368, subd. (b)(1)). As to both offenses, the People alleged Minor personally inflicted great bodily injury on the victim who was 70 years old or older (§ 12022.7, subd. (c)). The People also added an allegation that the attempted robbery offense fell within section 1203.09, subdivision (b)(2). The following is a summary of the evidence presented at the contested jurisdiction hearing in August 2019.

Philippe E. testified that on the afternoon of July 26, 2019, he and his wife, Jacqueline E., went to a restaurant to have lunch. Afterwards, he loaded his walker into the back of his car, and his wife indicated to him there was a young man in front of their car. Phillippe E. saw the young man, who looked around 15 years old, talking to his wife. When Jacqueline E. did not get into the car, Phillippe E. got out and found her on the ground. She raised her hand to him, not for help getting up, but just wanting to hold his hand.

---

1 All further statutory references are to the Penal Code unless otherwise indicated.

She asked him what happened in English, which was strange because the two always spoke to each other in French. Philippe E., thinking his wife was "not in her natural state," called 911.

Jacqueline E. testified she was 88 years old at the time of the incident. She recalled walking to the passenger side of her car after lunch but had no memory of what happened thereafter, even after viewing surveillance video of the incident. She could only recollect being in an ambulance en route to the hospital. Jacqueline E. said she was "out completely," though she returned home from the hospital the same day and received no further medical treatment. She also got her purse back the same day and had not lost anything. After the incident, she had a "huge" hematoma on the side of her head, bigger than a baseball. At the time of the hearing, the hematoma was still there, though it was the size of a quarter or dollar coin. The hematoma was sensitive to the touch, and Jacqueline E. could not sleep on that side of her head. After the incident, she had to lie down and rest several times throughout the day for about a week, because she could not stay on her feet for more than 15 minutes to half an hour. This was not the case prior to the incident. She also had a headache "for the last week or so," and she had neck pain, though she was not sure the neck pain was connected to the incident.

Surveillance video of the incident was admitted into evidence. It shows Philippe E. and Jacqueline E. leaving the restaurant. Jacqueline E. has a purse in her hand. The couple load Philippe E.'s walker into the trunk and, as Jacqueline E. opens the front passenger door, a young man runs up and talks to her. The young man moves closer as Philippe E. begins to get into the driver's seat. The young man gestures to Jacqueline E. that he wants to walk past her. When she steps aside to let him pass, he grabs her purse and breaks into a run. Jacqueline E., however, does not let go of the purse and

neither does the young man. Instead, he pulls or drags her from the front passenger side of the car to the rear trunk area on the driver's side, where she falls, slams into the ground, and rolls on the pavement (somehow still holding the purse). Per the clock embedded in the surveillance video, two to three seconds elapses from the grabbing to the fall. After the fall, the young man turns toward Jacqueline E., but keeps running. Once Jacqueline E. stops rolling, she lays completely still on the pavement; the video ends about 10 seconds later. During this time, Philippe E.—who was getting into the driver's seat of the car—does not appear to have noticed the commotion.

A police officer took fingerprints from where the young man touched the car. The fingerprints matched Minor's. That officer testified that Jacqueline E. was still on the ground when he arrived at the scene. Though she was conscious, she was confused and could not tell him what happened. The officer saw that Jacqueline E. had a head injury and blood in her hair; he also saw a bloodspot on the ground near her head about four inches long and three inches wide.

After considering the evidence, the juvenile court sustained the allegations in the supplemental petition in their entirety and found the attempted robbery adjudication qualified as an offense under Welfare and Institutions Code section 707, subdivision (b). At the disposition hearing, the court continued Minor's wardship, and committed him to a ranch facility for 12 months with a 180 day "aftercare period." Minor appealed.

## DISCUSSION

### A. Substantial Evidence Supports the Attempted Robbery Adjudication

Minor contends there was insufficient evidence showing his intent to rob Jacqueline E., an element of attempted robbery. At most, he argues, the

evidence shows an intent to commit a petty theft by purse snatching without use of force or fear.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the [minor] guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the juvenile adjudication].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

"Robbery is the felonious taking of personal property in the possession of another, from his [or her] person or immediate presence, and against his [or her] will, accomplished by means of force or fear." (§ 211.) The perpetrator must exert "some quantum of force in excess of that 'necessary to accomplish the mere seizing of the property.' " (*People v. Anderson* (2011) 51 Cal.4th 989, 995.) " 'But the force need not be great: " ' "[a]ll the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance . . . ." ' " ' " (*People v. Joseph* (2019) 33 Cal.App.5th 943, 951.) "An attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act (beyond mere preparation) toward its commission." (*People v. Medina* (2007) 41 Cal.4th 685, 694; see § 21a.)

Here, there is ample evidence Minor intended to rob Jacqueline E. by use of force. When Minor grabbed the purse, Jacqueline E. did not let go. Minor then tried to wrest the purse from her as he pulled her around the car where he finally caused her to fall. Minor's conduct clearly evidences intent

to use force to overcome the victim's resistance. (See *People v. Jones* (1992) 2 Cal.App.4th 867, 872.)

Minor's various contentions—that he did not arm himself, use threats or commands, strike or shove Jacqueline E., succeed in getting the purse, or go back and take the purse after Jacqueline E. fell—are of no moment. None of this was necessary to establish an intent to rob.

Relying on a statement made by the juvenile court just before it found the elements of attempted robbery true beyond a reasonable doubt, Minor argues the court applied an incorrect legal standard regarding the specific intent required for attempted robbery. Specifically, in discussing the difference between robbery and a purse snatching, the court observed: "robbery requires that you take the property from the person or presence of the person by force or fear. If the purse was snatched and she released it immediately and you ran away, that would not be a robbery. That would have been a grand theft person, I believe. But that is not what happened. [¶] You applied force and you dragged that woman behind her car and slammed her head into the pavement to get that purse, and she held on for dear life. . . . But that is clearly an attempted application of force to obtain property from the presence of another with the intent to deprive that person of the property, and the elements of attempted robbery have been met beyond a reasonable doubt."

This passage does not remotely reflect the application of an incorrect legal standard or a misunderstanding of the elements of the charged offense. Rather, this passage reflects the court's focus on the amount of force Minor actually used, which was entirely appropriate.

Minor also claims the juvenile court erred when it stated he "dragged" Jacqueline E. and "slammed her head" into the ground. We see no error. The

court's characterization of Minor as "dragging" the victim was eminently reasonable and supported by the video evidence, and we have no trouble adopting that characterization ourselves. The court's statement that Minor slammed Jacqueline E.'s head into the ground reasonably drew from the video evidence showing that Minor's forceful attempt to take the purse caused Jacqueline E. to fall and slam her head into the ground.

In sum, substantial evidence supports the attempted robbery adjudication.

**B. Substantial Evidence Supports the Elder Abuse Adjudication**

Section 368, subdivision (b)(1) ("368(b)(1)") makes it a crime for "[a] person who knows or reasonably should know that a person is an elder . . . and who, *under circumstances or conditions likely to produce great bodily harm or death*, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . . ." (Italics added.) An "elder" is "a person who is 65 years of age or older." (§ 368, subd. (g).)

Minor contends insufficient evidence supported his adjudication for elder abuse because there was no substantial evidence that he inflicted unjustifiable physical pain or mental suffering under circumstances likely to produce great bodily harm or death. Minor claims the offense was merely an attempted purse-snatching, which was "not likely to produce great bodily injury or death." We reject the argument.

As discussed above, Minor tried to overcome Jacqueline E.'s resistance to him taking her purse by breaking into a run and pulling her around her car. At the time of the incident, Minor was 14 years old, while Jacqueline E. was nearly 90 years old. That she was advanced in her years was obvious. Breaking into a surprise run and pulling any person around a car is a recipe for a rapid, unexpected, and uncontrolled fall, and when the person being

pulled is of an advanced age such as Jacqueline E. was here, such a fall on pavement could easily produce great bodily harm or even death. (See, e.g., *People v. Racy* (2007) 148 Cal.App.4th 1327, 1333 ["as a matter of common knowledge, [74 years old] is an age that carries with it an increased risk of bone fractures from a fall"].) Indeed, as will be discussed below, substantial evidence establishes that Jacqueline E. did in fact suffer great bodily injury.

Minor cites to *People v. Thiel* (2016) 5 Cal.App.5th 1201 and *People v. Racy*, *supra*, 148 Cal.App.4th 1327, where there was substantial evidence of circumstances or conditions likely to produce great bodily harm or death, and attempts to distinguishes the circumstances in those cases from those at hand. (*Thiel*, at pp. 1217–1218; *Racy*, at p. 1333.) But these cases bear no resemblance to the present case and offer no basis for concluding that the circumstances here were unlikely to produce great bodily harm or death.

In sum, substantial evidence supports the elder abuse adjudication.

### C. Substantial Evidence Supports the Great Bodily Injury Enhancements

Minor next contends there was insufficient evidence that he inflicted great bodily injury to sustain the great bodily injury enhancements (§ 12022.7, subdivision (c)) as to both counts.

" '[G]reat bodily injury' means a significant or substantial physical injury." (§ 12022.7, subd. (f).) " 'It is an injury that is greater than minor or moderate harm.' " (*People v. Wyatt* (2012) 55 Cal.4th 694, 702; CALCRIM No. 3162.) "[T]o be significant or substantial the injury need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage." (*People v. Cross* (2008) 45 Cal.4th 58, 64.) "[S]ome physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' " (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047.) A loss of consciousness that does not require medical treatment can be

sufficient to establish "serious bodily injury" under section 243 (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149), and there is abundant decisional authority acknowledging that "serious bodily injury" and "great bodily injury" are "essentially equivalent." (*People v. Johnson* (2016) 244 Cal.App.4th 384, 391–392.) It is well settled that the determination of great bodily injury is a question of fact. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) "In determining substantiality, the [factfinder can] consider the effect of severe blows upon elderly persons." (*People v. Clay* (1984) 153 Cal.App.3d 433, 460.)

To recount some of the evidence here, Jacqueline E. testified she suffered a "huge" hematoma to her head that was bigger than a baseball. It was sensitive to the touch and she could not sleep on that side of her head. The police officer who arrived on the scene testified he saw blood in her hair and a bloodspot on the ground near her head that was about four inches long and three inches wide. Jacqueline E. still had the hematoma at the contested jurisdiction hearing, which was held about a month after the incident, though by that time it had reduced to the size of a quarter or dollar coin. For about a week after the incident, she could not stay on her feet for more than half an hour at most, and she had to repeatedly lie down to rest throughout the day, which was not the case before the incident. Also after the incident, and for the week or so before she testified, Jacqueline E. had a headache that was not present before the incident. She also complained of neck pain for about a week. The court, acting as factfinder, could reasonably attribute the fatigue, headache, and neck pain, to the fall.

Contrary to Minor's argument, there was also convincing evidence that Jacqueline E. lost consciousness after the fall. The surveillance video showed Jacqueline E. falls, rolls to a stop, then remains completely motionless on the ground until the surveillance video cuts off about ten seconds later.

Jacqueline E. testified at the hearing that she still had no memory of talking to anyone or knowing what happened at her car, and that she could only recollect waking up in the ambulance. Philippe E. testified that when he spoke to Jacqueline E. on the ground after the incident, she asked him what happened—i.e., she could not recollect what just transpired. And because she asked him what happened in English, even though they always speak to each other in French, he knew she was "not in her natural state." The officer who arrived on the scene testified that Jacqueline E. was conscious, but she seemed confused and could not tell him what happened.

Considered in the light most favorable to the judgment, the evidence of Jacqueline E.'s hematoma, loss of consciousness (including confusion and loss of memory), fatigue, and prolonged pain was more than sufficient to support the juvenile court's determination that Minor inflicted great bodily injury. Ultimately, Minor's various arguments to the contrary amount to a request that we reweigh the evidence, which we cannot do.

**D. Maximum Term of Confinement, Custody Credits, and Section 654**

In his opening brief, Minor contended the juvenile court failed to specify his maximum term of confinement, failed to calculate custody credits, and failed to stay punishment for one of the counts pursuant to section 654. In his reply brief, however, Minor asserts that these issues are moot. Minor has augmented the appellate record with documents showing he successfully completed probation and the court dismissed the wardship in January 2021. Given Minor's apparent abandonment of the claims, we will not consider them further. (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813.)

### E. The Offense Falls Within Welfare and Institutions Code Section 707, Subdivision (b)

Minor contends his attempted robbery adjudication does not fall within Welfare and Institutions Code section 707, subdivision (b) ("707(b)").[2] This contention presents an issue of statutory interpretation, which we review de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] ' "When the language of a statute is clear, we need go no further." [Citation.] But where a statute's terms are unclear or ambiguous, we may "look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part." ' " (*People v. Harrison* (2013) 57 Cal.4th 1211, 1221–1222.)

As relevant here, Welfare and Institutions Code section 707(b) provides: "This subdivision is applicable to any case in which a minor is alleged to be a person described in Section 602 by reason of the violation of one of the following offenses," including "[a]n offense described in Section 1203.09 of the Penal Code." (Welf. & Inst. Code, § 707(b)(16).) In turn, section 1203.09 contains two subdivisions pertinent to our review. Section 1203.09, subdivision (a), provides: "Notwithstanding any other law, probation shall not be granted to, nor shall the execution or imposition of

---

[2] Various consequences arise when an offense falls within Welfare and Institutions Code section 707(b). For example, such an offense impacts whether and when juvenile records can be sealed or destroyed. (See, e.g., Welf. & Inst. Code, §§ 781, subds. (a)(1)(D), (d) & 786, subds. (a), (d).)

sentence be suspended for, any person who commits or *attempts to commit* one or more of the crimes listed in subdivision (b) against a person who is 60 years of age or older; or against a person who is blind, a paraplegic, a quadriplegic, or a person confined to a wheelchair and that disability is known or reasonably should be known to the person committing the crime; and who during the course of the offense inflicts great bodily injury upon the person." (Italics added.) Section 1203.09, subdivision (b), provides that subdivision (a) applies to the crime of robbery. (§ 1203.09, subd. (b)(2).)

Under the plain language of these statutes, an attempted robbery against the particular types of victims specified in section 1203.09—e.g., a victim who is 60 years of age or older, where the perpetrator inflicts great bodily injury—is an offense described in section 1203.09 and therefore qualifies as an offense falling within Welfare and Institutions Code section 707(b).

Minor contends we should read Welfare and Institutions Code section 707(b)(16)—which explicitly states Welfare and Institutions Code section 707(b) applies to an "offense described in Section 1203.09 of the Penal Code"—as referring only to offenses described in *subdivision (b)* of section 1203.09. We are not persuaded. Had the Legislature intended such a limitation, it could easily have included language to that effect. But the Legislature did not do so, and we cannot rewrite the statutory language as Minor urges. While Minor additionally observes that section 1203.09, subdivision (a), mainly concerns probation eligibility, the point has no force inasmuch as the entire statute concerns probation ineligibility. At bottom, Welfare and Institutions Code section 707(b)(16) is crystal clear in its application to an "offense described in Section 1203.09 of the Penal Code."

Contrary to Minor’s assertion, our conclusion does not render superfluous the attempted murder provision in Welfare and Institutions Code section 707(b)(12). That is because Welfare and Institutions Code section 707(b)(12) applies broadly to any attempted murder, while any attempted crime under section 1203.09, including attempted murder and attempted robbery, specifically requires a victim “who is 60 years of age or older; or . . . a person who is blind, a paraplegic, a quadriplegic, or a person confined to a wheelchair” and whose “disability is known or reasonably should be known to the person committing the crime,” plus the infliction of “great bodily injury.” Thus, giving effect to the plain terms of the two statutes implicates no redundancy or surplusage and does not lead to absurd consequences.

Although we need not go further because the statutory language is unambiguous, our examination of the legislative history—particularly concerning the 2008 amendment to Welfare and Institutions Code section 707(b)(16) and the 1994 amendment to Welfare and Institutions Code section 707(b)(12)—reveals nothing supporting Minor’s position. (Legis. Counsel’s Dig., Sen. Bill No. 1498 (2007–2008 Reg. Sess.) [indicating revision from “any” to “an” in Welfare and Institutions Code section 707(b)(16) was a “nonsubstantive” change to “maintain the codes”]; Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 1948 (1993–1994 Reg. Sess.) as amended Jan. 3, 1994 [indicating “assault with intent to commit murder”—previously enumerated in Welfare and institutions Code section 707(b)(12)—was being replaced with crime of attempted murder because the former offense was “no longer found in the Penal Code”].)

Finally, Minor latches onto *David P. v. Superior Court* (1982) 127 Cal.App.3d 417, where the court concluded attempted robbery is not an enumerated crime in Welfare and Institutions Code section 707(b). But the

court in *David P.* did not purport to determine whether attempted robbery *against elderly or disabled victims where the perpetrator inflicts great bodily injury* could be an enumerated offense by way of section 1203.09. "Cases are not authority, of course, for issues not raised and resolved." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 943.)

Beyond the foregoing, Minor reiterates his challenge to the sufficiency of the evidence of great bodily injury. As already discussed in part C, *ante*, substantial evidence supports the attendant great bodily injury enhancement.

In sum, we conclude Minor's adjudication for attempted robbery is an offense described in section 1203.09 and so falls within Welfare and Institutions Code section 707(b).[3]

**DISPOSITION**

The orders of the juvenile court are affirmed.

---

[3] Given this conclusion, we need not and do not address Minor's argument that he suffered from ineffective assistance of counsel because his attorney below conceded the attempted robbery fell within Welfare and Institutions Code section 707(b).

Fujisaki, Acting P.J.

WE CONCUR:

Petrou, J.

Chou, J.*

A158575

* Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**In re Noah S. (A158575)**

Trial Court: Contra Costa

Trial Judge: Hon. John C. Cope

Attorneys:

Amanda K. Roze, under appointment by the First District Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General of California, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Gregg E. Zywicke, Deputy Attorney General for Plaintiff and Respondent.